SAMUEL STRASBOURGER, as Trustee in Bankruptcy of the Estate of MADERO BROS., ·INC., Respondent, v. MATILDA LEERBURGER, as Executrix, etc., of HENRY LEERBURGER, Appellant, Impleaded with BENEDICT M. LEERBURGER, Individually, and as Copartners, Carrying on Business under the Firm Name of LEERBURGER BROS., Defendant.

First Department, March 4, 1921.

Sales — action by buyer to recover for breach of contract — failure of buyer to make payment on time constitutes breach.

In an action by the trustee in bankruptcy of a buyer to recover damages for breach of a contract for the sale of quinine, it appeared that on the day when payment was due defendants tendered the merchandise in question as well as delivery of the shipping documents and demanded from plaintiff's representatives in charge of said bankrupt concern the agreed purchase price therefor, net spot cash in New York funds, pursuant to the agreement and agreed to accept a certified check by three o'clock of the day of the demand; that it was necessary to have said check signed by the plaintiff and also by the referee in bankruptcy and that an uncertified check was tendered to the defendants three days thereafter and refused.

Held, on all the evidence, that the breach of the contract was committed by the plaintiff and not by the defendants.

APPEAL by the defendant, Matilda Leerburger, as executrix, etc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 4th day of May, 1920, upon the verdict of a jury rendered by direction of the court, and also from an order entered in said clerk's office on the .11th day of May, 1920, denying defendant's motion to set aside the verdict and for a new trial made upon the minutes.

*Newborg & Callan [Clarence J. Shearn* of counsel; *Sidney Newborg* and *Ralph O. L. Fay* with them on the brief], for the appellant.

*Irving L. Ernst* and *Charles A. Kalish [Nathan Ballin* of counsel], for the respondent.

DOWLING, J.:

This action is brought to recover $6,000 damages for the breach of a contract made October 18, 1917, between Madero Bros., Inc., and Henry Leerburger and Benedict M. Leerburger, copartners, doing business under the firm name of Leerburger Bros., whereby the latter agreed to sell to Madero Bros., Inc., and Madero Bros., Inc., agreed to buy from them 20,000 ounces of Java sulphate quinine at eighty cents an ounce, C. I. F. New York, terms of payment, net spot cash in New York funds on delivery of documents, shipments to be made in October or November at the option of the seller. Henry Leerburger having died, the defendant Matilda Leerburger was duly appointed executrix under his last will and testament by the surrogate of New York county. On February 18, 1918, a petition in involuntary bankruptcy was filed against Madero Bros., Inc., which was a domestic corporation, in the office of the clerk of the District Court of the United States for the Southern District of New York, and said corporation was thereafter duly adjudicated a bankrupt and the plaintiff, at a meeting of creditors held April 12, 1918, was duly elected as trustee in bankruptcy for said corporation, which election was duly confirmed by the referee in charge, and the plaintiff duly qualified as such trustee and is now so acting. The amended supplemental complaint sets forth further that at the time of the making of the contract in question the merchandise was in Java, Dutch East Indies, and arrived in New York May 1, 1918. It is then alleged:

" *Seventh.* That thereafter and on or about the 3rd day of May, 1918, the plaintiff upon learning of the arrival of the said goods, wares and merchandise in New York, duly offered to pay to the said Henry & Benedict Leerburger the full purchase price of the said goods, wares and merchandise and duly demanded of them the delivery thereof, but they neglected

and refused and have ever since neglected and refused to make delivery of the said goods, wares and merchandise to the plaintiff herein."

It is further alleged that the difference between the market price and the contract price of the goods on May 3, 1918, when the defendants are claimed to have breached their contract, was the sum of $6,000. It is further alleged:

" *Ninth.* That at all the times mentioned herein, the plaintiff was ready, able and willing to perform the said contract according to its terms and has duly performed each and every term and condition thereof, except as waived and prevented by the said Henry Leerburger."

The answer of the defendants, after certain specific denials, sets up as a first defense that plaintiff, by his acts, conduct, representations and statements waived any neglect or refusal to make delivery of the merchandise in that he, plaintiff, stated to defendants that he would subsequently make a tender of the purchase price of the said goods to them and would then and there demand delivery of the goods and he did thereafter make an alleged tender of the purchase price by tendering an uncertified check in violation of the terms of the contract. For a second defense it is alleged that on May 3, 1918, the defendants, pursuant to the agreement, duly offered and tendered to plaintiff the merchandise in question as well as delivery of the shipping documents and demanded the agreed purchase price net spot cash in New York funds therefor pursuant to the agreement, but plaintiff refused and failed to pay the agreed purchase price to defendants, thereby breaching the agreement.

Upon the trial the following facts appeared: On May 1, 1918, the shipping order for the fifty cases of quinine in question was mailed by Balfour, Williams & Co., the importers, to the defendants and was received by them on May second, at one P. M. On May third one of defendants' attorneys called upon plaintiff's representative in charge of the bankrupt estate of Madero Bros., Inc., and presented a bill for the quinine and asked if they were going to take up the contract, to which the representative, Bonynge, replied in the affirmative. Newborg, defendants' attorney, then said that they would expect a certified check by three o'clock and inquired if

Bonynge would be able to get it, to which the latter replied: " Well, I will do my best. I have my doubts whether I will be able to do it, because I have first to have the check signed by the trustee in bankruptcy and then have it countersigned by the referee in bankruptcy, and I don't know whether I will be able to do it before three o'clock, but I will do my best." This conversation took place in the office of Madero Bros., Inc., at 100 John street. The plaintiff's office was at 74 Broadway, where he was a practicing attorney. The office of the referee in bankruptcy is at No. 2 Rector street. This conversation between defendants' attorney and plaintiff's representative, who also was an attorney though not then in active practice, resulted in the drawing of the check and its being sent to plaintiff and the office of the referee by Mr. Bonynge at some unspecified time before two o'clock. Although Mr. Bonynge swears the check was drawn on May third, as a matter of fact it bears date May fourth, which was Saturday. At two o'clock on Friday, May third, defendant Benedict Leerburger, accompanied by another of his attorneys, called at the office of the plaintiff and said to Mr. Bonynge: " I understand there is some trouble about getting a check for this quinine." To which Bonynge says he replied: " Not exactly any trouble," and that he explained that he had to have the check first signed by the trustee in bankruptcy and then countersigned by the referee, and that he had so little time he did not know that he would be able to have it all done by three o'clock, and that they were doing their best and the man was then out with the check trying to have it signed. Bonynge says Leerburger then said to him: " Well, we want a certified check  *  *  *  by three o'clock " and " if you don't give us a certified check, why your contract will be broken," to which Bonynge replied: " I will do the best I can to get it through by that time." At that time Leerburger had the delivery order for the quinine with him and tendered it to Bonynge and said he would deliver it to his messenger if he had a certified check for him before three o'clock. It will be noted that although Bonynge claims that the check had been already drawn and had been sent to plaintiff and the referee for signature, it did not bear date May third, when the conversation took place, but the following day,

and Bonynge did not disclose this fact to Leerburger when the demand was made that a certified check should be produced by three o'clock on May third. Bonynge testified that the check had been given to a messenger to be taken both to the referee and the trustee, but he returned with the information that the referee had left for his country place and would not be back until the following Tuesday; whereupon the check was mailed by special delivery to the referee at his country place. It was received by him there on Saturday, May fourth, between nine and ten A. M., whereupon he countersigned it and either mailed it to New York or brought it down with him on Monday morning, he being unwilling to swear which he did. Bonynge, however, testified that the check came back by mail about four-thirty Monday afternoon, May sixth, when he went with it to 170 Broadway, defendants' office, and asked for the delivery orders, telling defendants he had the check, which defendants refused, stating the contract was broken. Mr. Benedict Leerburger examining the check said: "Why it is not even certified." Bonynge said he explained that he had just received it by mail and came around. It was then after banking hours, and he asked if they would take the check if it had been certified, to which Leerburger replied: "No. Your contract is broken. We are not going to deliver the goods." Defendant Leerburger testified that about half-past three on the afternoon of May third an inspection order was asked for these goods, which was refused as quinine is never inspected. When the check was not received defendants wrote to plaintiff that "As you have broken the contract which we had with Madero Bros., Inc., for the sale of 20,000 oz. of sulphate of quinine, we rescind the contract." To this plaintiff replied as follows:

"GENTLEMEN.— Your letter dated May 5th, advising me that you rescind the contract for the sale of 20,000 ozs. of sulphate of quinine received. As I advised you this morning on the telephone I will hold you responsible for any damage occasioned by your refusal to deliver these goods. You were advised yesterday when you called at my office that it would be necessary to obtain the countersignature of the Referee in Bankruptcy to the check in payment for these goods.

"The Referee is out of town and check has been forwarded

to him and will no doubt be in my hands on Monday at which time same will be delivered to you and I shall expect you to give me a delivery order for these goods. If you then fail to deliver these goods, I shall have proceedings taken to hold you responsible for breach of contract."

The defendant Henry Leerburger was examined in the bankruptcy proceeding on May 9, 1918, and at that time he was asked whether he would accept a check for $16,000 made by the trustee of Madero Bros., Inc., and countersigned by the referee, to which he answered he would not because he considered they had broken the contract. There was no offer even on May ninth of a certified check for the amount.

I am of the opinion that upon the undisputed facts in this case the breach of this contract was committed by the plaintiff and not by the defendants. The obligation upon the plaintiff under the written agreement of the parties was to pay net spot cash in New York funds on delivery of the documents. Defendants tendered the documents at two o'clock on May third, after having presented a bill and given notice of the arrival of the goods an hour earlier to plaintiff. Defendants were willing to accept a certified check in place of cash and so advised plaintiff through his representative and as the offices of all the parties concerned were within a short distance of each other there is no reason suggested why the certified check was not in fact obtained, save the departure of the referee in bankruptcy to his country home. But the referee was at his office at two o'clock, where he conducted an examination, and did not leave until it was time to take the three-thirty P. M. train from the Grand Central Station. No effort was made to telephone to the referee to arrange to have him sign the check before he left or to learn his whereabouts, so that defendants might be advised if it was impossible to obtain his countersignature by three o'clock. It seems to me very significant as bearing upon the good faith of the efforts made to obtain the signatures in time that the check itself, although drawn on May third it is claimed, bears date on May fourth, and of this no explanation is given.

Upon all the facts it seems clear that the plaintiff had defaulted on this contract by his failure to make payment on May third before the time fixed which, under all the circum-

First Department, March, 1921.    [Vol. 195.

stances, was a reasonable one. But plaintiff refused to treat the letter of defendants of May third rescinding the contract as effective and wrote that he would deliver the check on Monday and expected delivery orders for the goods then. When the tender of the check was made it was after banking hours on Monday and the check was still uncertified. So that from no viewpoint did this relieve plaintiff from the consequences of his breach. If plaintiff's representative had been more diligent in his efforts to obtain the necessary signatures to the check and had given valid reasons for his failure to obtain them, together with the certification by the bank within the required time, and had then followed these efforts and proof by the tender of a certified check on Monday, a question might have been presented calling for the verdict of the jury. It should be noted as well that although it is alleged in the complaint that plaintiff was at all times ready, able and willing to perform the contract, there is no proof that the bankrupt estate had on deposit with the trust company on which the check was drawn sufficient funds to meet the same either on May third, May fourth or May sixth. Furthermore, plaintiff has failed to prove as further alleged that he has duly performed each and every term and condition of the contract except as waived by Henry Leerburger, but on the contrary his own proof demonstrates that he has failed to perform the essential condition of payment in the manner prescribed by the agreement.

While it may be quite true, as contended by plaintiff, that the defendants took advantage of the situation to rescind this contract because of the increased value of the quinine, the fact remains that they acted within their legal rights, and that the breach was that of the plaintiff and not of the defendants.

The judgment and order appealed from will, therefore, be reversed, with costs to appellant, and the complaint dismissed, with costs.

CLARKE, P. J., LAUGHLIN, MERRELL and GREENBAUM, JJ., concur.

Judgment and order reversed, with costs, and complaint dimissed, with costs.